[Cite as *In re J.S.*, 2014-Ohio-3130.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re J.S.

Court of Appeals No. L-14-1055

Trial Court No. JC 12227665

## DECISION AND JUDGMENT

Decided: July 16, 2014

* * * * *

Laurell A. Kendall, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, that terminated the parental rights of father and appellant (mother) and awarded permanent custody of J.S. to appellee, Lucas County Children Services ("LCCS).

**{¶ 2}** Appellant's appointed counsel has submitted a request to withdraw as counsel pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), asserting that the appeal is frivolous. This court has found that "'the procedures enunciated in *Anders* are applicable to appeals involving the termination of parental rights.'" *In re R.B.*, 6th Dist. Lucas No. L-09-1274, 2010-Ohio-4710, ¶ 1, quoting *Morris v. Lucas Cty. Children Servs. Bd.*, 49 Ohio App.3d 86, 87, 550 N.E.2d 980 (6th Dist.1989).

**{¶ 3}** In *Anders*, the United States Supreme Court held that where counsel, after a conscientious examination of the case, determines the case to be wholly frivolous, she should so advise the court and request permission to withdraw. *Anders* at 744. This request, however, must be accompanied by a brief identifying anything in the record that could arguably support the appeal. *Id.* Counsel must also furnish her client with a copy of the brief and request to withdraw and allow the client sufficient time to raise any matters that she chooses. *Id.* Once these requirements have been satisfied, the appellate court must then conduct an independent examination of the proceedings below to determine if the appeal is indeed frivolous. If the appellate court determines that the appeal is frivolous, it may grant counsel's request to withdraw and dismiss the appeal without violating constitutional requirements or may proceed to a decision on the merits if state law so requires. *Id.*

**{¶ 4}** In the case before us, appointed counsel for appellant has satisfied the requirements set forth in *Anders*. Appellant has not filed a brief in this matter. Counsel

2.

for appellant, however, consistent with *Anders* has asserted two potential assignments of error for our consideration:

> Potential Assignment of Error 1: The trial court erred in finding that mother J.S. failed to provide clear and convincing evidence that, notwithstanding the termination of her parental rights for two older children, she was able to provide a legally service [sic] permanent placement and adequate care for the health, welfare and safety of the child.

> Potential Assignment of Error 2: The trial court erred in awarding permanent custody to Lucas County Children Services Board when father was available for placement, and there were suitable maternal relatives available to take legal custody of J.C.

{¶ 5} Appellant is the biological mother of J.S. The biological father of J.S. did not appear at the proceedings below, despite proper notification, and expressly told the LCCS caseworker assigned to this case that he was not interested in custody. Accordingly, this appeal will only address issues that relate to mother.

{¶ 6} Mother previously lost custody of two other children for issues related to mental health, parenting, housing and domestic violence. Upon J.S.'s birth in October 2012, both mother and J.S. tested positive for opiates. Appellee filed a complaint in dependency and neglect. Following a shelter care hearing, mother retained custody of J.S. under the protective supervision of appellee. It was believed at that time that mother had a strong support system that could help her with J.S. Shortly thereafter, appellee

3.

learned that there was no heat in appellant's home and that the expected support had either changed or was no longer present. Additionally, during a doctor's visit, J.S. was dehydrated and lethargic, requiring hospitalization. Accordingly, on October 26, 2012, appellee filed an amended complaint in dependency and neglect and sought temporary custody of the child.

{¶ 7} Following a shelter care hearing, J.S. was adjudicated dependent and neglected, and temporary custody was awarded to appellee. A case plan was established which provided appellant with services to enable her to regain custody of her child. The services consisted of domestic violence survivors classes, working with a parenting coach, and completing a dual diagnostic assessment. Appellant did complete the diagnostic assessment which recommended that she continue mental health services with Unison. Mental health issues have plagued mother throughout this case and in the cases involving the termination of her parental rights to her two older children. Mother is bipolar and has been inconsistent in taking her medication. She has a history of poor judgment. She puts herself at risk of harm by meeting men on the internet and in chat rooms and then allowing them into her home for sexual relations. In addition, mother has no real means of support. Her rent is $25 per month, which she often has difficulty paying. To help pay the rent, she often allows others whom she barely knows to live with her.

{¶ 8} Throughout the proceedings below, mother made some progress on her case plan. With regard to mental health services, she regularly attended her counseling

4.

sessions, kept all of her scheduled appointments, and regularly met with a nurse practitioner for medication management. While she regularly attended her visits with her child, accompanied by a parenting coach, her insufficient progress on that issue prevented her from beginning recommended parenting classes. She also made insufficient progress in Project Genesis, the domestic violence program in which she was engaged. It is noteworthy that this was the third time mother was engaged in that program. It was reported that mother continues to struggle with relationships and boundary issues. The October 2013 administrative review noted that these issues have been addressed with mother repeatedly by both the LCCS and Project Genesis staffs, yet mother continues to exercise poor judgment and places herself in situations that could present a risk of harm to herself and her child. As an example, the review noted that mother recently allowed a couple she had just met to move in with her and then a friend of theirs also moved in with her.

{¶ 9} On November 19, 2013, appellee filed a motion for permanent custody of the child. On February 12, 2014, the case proceeded to a hearing on that motion at which Kerry Smith-Emery, the LCCS ongoing caseworker assigned to this case, Sandra W., the child's paternal great-aunt, Alanna Paully, the guardian ad litem, and mother testified.

{¶ 10} Smith-Emery testified to the facts set forth above and to mother's successful and unsuccessful progress on her case plan services. Smith-Emery testified that mother's mental health issues are her biggest obstacle, particularly her admitted inability to say no to people whom she barely knows. Allowing these people to move

5.

into her home jeopardizes her safety and the safety of her child. It also jeopardizes her ability to maintain subsidized housing because it violates the terms of her lease. Although mother has been engaged in mental health treatment, Smith-Emery testified that treatment is ongoing and is not yet completed. Smith-Emery concluded that permanent custody was in the child's best interest primarily because of mother's mental health issues. She further testified that since shortly after birth, the child had been living with a paternal relative who is interested in adopting the child. She stated that LCCS was not aware of any other appropriate relative with whom to place the child. Although a relative named Sandra had recently contacted her and expressed interest in custody, Smith-Emery testified that the woman never provided her with information to complete a background check. When Smith-Emery tried to contact Sandra by the cell phone number she had left, the phone was either turned off or was disconnected.

{¶ 11} Sandra W., the great aunt of the child, testified at the hearing below. She stated that she contacted LCCS several months before the hearing and expressed her interest in obtaining legal custody of the child. She admitted that appellee may have had trouble contacting her because of her work schedule, but stated that she was still interested in obtaining legal custody of the child.

{¶ 12} Mother also testified at the hearing below. She testified as to the services in which she had been engaged since the child's birth, which have included mental health services, domestic violence services and utilizing a parent coach for her visits with the child. She stated that she is bipolar and has ADHD, and that she has been seeing a

6.

therapist and taking medication since 2005. She testified that she has been learning how to have healthy relationships and stated that she no longer meets men in on-line chat rooms. Regarding domestic violence services, mother testified that she has been attending Project Genesis, now for the third time, and admitted that she has not completed the program. She further admitted that she had missed all of her visits with her child since December 2013. Mother has no stable income. She previously had a paper route which earned her $39 per week, but she lost that job in early February 2014, when she overslept. Despite the difficulties in her life, mother testified that she wants to be reunified with her child and believes that she has made progress in her life because of her child.

{¶ 13} Finally, the child's guardian ad litem, Alanna Paully, testified. She stated that in light of mother's history of poor judgment and decision making with regard to allowing strangers into her home, permanent custody was in the best interest of the child.

{¶ 14} On March 4, 2014, the lower court issued its decision which granted LCCS's motion for permanent custody and terminated the parental rights of mother and father. The court found by clear and convincing evidence that the child cannot and should not be placed with either parent within a reasonable period of time and that an award of permanent custody to LCCS was in the child's best interest. In reaching this determination, the court expressly found that following the placement of the child outside the child's home, and notwithstanding reasonable case planning and diligent efforts by LCCS to assist the parents to remedy the problems that initially caused the child to be

7.

placed outside the child's home, the parents failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.

{¶ 15} The court further found that mother has had parental rights involuntarily terminated with respect to siblings of this child and failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, she can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of this child. On that issue, the court noted that mother continues to make unsound judgments that make her vulnerable by permitting people she knows little to nothing about to move into her residence, by seeking out individuals who have been abusive to her in the past, and by placing herself in positions that are likely to jeopardize her own safety. The court therefore found that mother had failed to demonstrate by clear and convincing evidence that she had remedied the conduct that lead to the involuntary termination of her parental rights with respect to siblings of this child.

{¶ 16} On the issue of the best interest of the child, the lower court considered that LCCS had identified a prospective adoptive home and that the child interacts well with the prospective adoptive placement, that the child is in need of a legally secure placement, that an award of permanent custody would facilitate an adoptive placement, and that mother has had her parental rights involuntarily terminated with respect to two siblings of this child. Accordingly, the court granted appellee's motion and terminated the parental rights of mother and father.

8.

{¶ 17} Together, the two potential assignments of error challenge the propriety of the trial court's order terminating her parental rights and awarding permanent custody of the child to LCCS.

{¶ 18} A trial court's determination in a permanent custody case will not be reversed on appeal unless it is against the manifest weight of the evidence. *In re Andy-Jones*, 10th Dist. Franklin Nos. 03AP-1267 and 03AP-1231, 2004-Ohio-3312, ¶ 28. The factual findings of a trial court are presumed correct since, as a trier of fact, it is in the best position to weigh the evidence and evaluate the testimony. *In re Brown*, 98 Ohio App.3d 337, 342, 648 N.E.2d 576 (3d Dist.1994). Moreover, "[e]very reasonable presumption must be made in favor of the judgment and the findings of fact [of the trial court]." *Karches v. Cincinnati*, 38 Ohio St.3d 12, 19, 526 N.E.2d 1350 (1988). Thus, judgments supported by some competent, credible evidence going to all essential elements of the case are not against the manifest weight of the evidence. *Id.; C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

{¶ 19} The disposition of a child determined to be dependent, neglected or abused is controlled by R.C. 2151.353 and the court may enter any order of disposition provided for in R.C. 2151.353(A). Before the court can grant permanent custody of a child to a public services agency, however, the court must determine: (1) pursuant to R.C. 2151.414(E) that the child cannot be placed with one of his parents within a reasonable time or should not be placed with a parent; and (2) pursuant to R.C. 2151.414(D), that permanent commitment is in the best interest of the child. R.C. 2151.353(A)(4). R.C.

9.

2151.414(E) provides that, in determining whether a child cannot be placed with a parent within a reasonable time or should not be placed with a parent, the court shall consider all relevant evidence. If, however, the court determines by clear and convincing evidence that any one of the 16 factors listed in the statute exist, the court must find that the child cannot be placed with a parent within a reasonable time or should not be placed with a parent. Those factors include:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

* * *

(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Revised Code, or under an existing or former

10.

law of this state, any other state, or the United States that is substantially equivalent to those sections, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child. R.C. 2151.414(E).

{¶ 20} Clear and convincing evidence is that proof which establishes in the mind of the trier of fact a firm conviction as to the allegations sought to be proven. *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E. 118 (1954). In determining the best interest of the child, R.C. 2151.414(D) directs the court to consider all relevant factors, including, but not limited to:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or

private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 21} The factors set forth in R.C. 2151.414(E)(7) through (11) include, relevant to this case, whether the parent has had parental rights involuntarily terminated with respect to a sibling of this child. R.C. 2151.414(E)(11).

{¶ 22} We have thoroughly reviewed the record from the proceedings below and conclude that the lower court's findings in support of the factors listed in R.C. 2151.414(E)(1) and (11) with regard to mother were supported by competent, credible evidence.

{¶ 23} Mother has struggled for years with mental health issues. She has been in treatment for those issues since 2005, yet she continues to place herself, and thus could potentially place her child, at risk of harm. As of the date of the hearing below, mother's treatment for her mental health issues was still ongoing. Similarly, she has participated in domestic violence counseling three times, the third time for this case. Although she

12.

previously completed the Project Genesis program, as of the date of the hearing below, she had not successfully completed the program following the referral in this case. Accordingly, mother failed to remedy the conditions that caused the child to be placed outside the child's home.

{¶ 24} It is undisputed that mother had her parental rights involuntarily terminated with respect to two siblings of this child. The issues in those cases were again, predominantly, mental health and domestic violence. Although mother testified in this case that she no longer visits on-line chat rooms to meet men and is learning to walk away from men who are violent toward her, the court's finding under R.C. 2151.414(E)(11) that mother has failed to demonstrate that she has remedied the conduct that led to the involuntary termination of her parental rights to siblings of this child, was supported by clear and convincing evidence.

{¶ 25} Appellant's counsel further questions whether the lower court erred in awarding permanent custody to LCCS when father was available for placement and other relatives were available to take legal custody of the child. There is no merit to this assertion. As the trial court specifically found, father demonstrated a lack of commitment to the child by failing to regularly support, visit or communicate with the child when able to do so. R.C. 2151.414(E)(4). Moreover, appellant's standing in this case is limited to challenging whether the court improperly terminated her parental rights. She has no standing to challenge whether the court erred in failing to grant custody of the child to a

13.

third party. *In re R.V.*, 6th Dist. Lucas Nos. L-10-1278, L-10-1301, 2011-Ohio-1837, ¶ 15-16.

{¶ 26} The trial court's decision was supported by clear and convincing evidence. Accordingly, the two potential assignments of error are without merit.

{¶ 27} After conducting an independent review of the record as required by *Anders*, we have found no meritorious grounds for appeal. Appellant's parental rights were terminated in accordance with Ohio's statutory system and due process requirements. Appellant's counsel's motion to withdraw is therefore found well-taken and is granted.

{¶ 28} On consideration whereof, the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. The clerk is ordered to serve all parties with notice of this decision.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.          _____
                                              JUDGE

Arlene Singer, J.          

Thomas J. Osowik, J.          _____
CONCUR.                                       JUDGE

                                  _____
                                              JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.sconet.state.oh.us/rod/newpdf/?source=6.